ALEXANDER CHAPPELL, plaintiff in error, *vs.* URIAH BOYD *et al.*, defendants in error.

1. In attesting an affidavit to a bill in equity, a notary public need not affix his seal. It is not such a notarial act, under section 1502 of the Code, as requires a seal for its authentication.

2. Process bearing attest in the name of the Honorable James M. Clark, of said court, leaving out the word "judge," is good, especially if no exception be taken to it until after judgment.

3. Where the bill alleges that vendor of lands, who gave bond to make titles to vendee on payment of purchase money, has only received half the purchase money, and is sued for that half, because it was not the money of the vendee but that of his wife, and that he has sued to judgment the other half of the purchase money, and levied the execution based thereon upon the the land, having first made a deed thereto solely for the purpose of selling the land to make his money under the statute, Code, 3586, when he was met by a claim of the wife to the land, on the ground that her money paid for half of it, and that was all it was worth, and that this claim case, after delays from time to time, was decided against the wife by the jury and court below and this court on appeal, and on again re-advertising for sale he was met by another claim, wholly frivolous and intended for delay only, by the brother of the wife, holding a pretended title under deeds from the husband and wife, made after the decision of the first claim case, for an inadequate price in the form of a promissory note, payable in 1878, with possession retained by the

Chappell *vs.* Boyd *et al.*

husband and wife without rent, and that this latter claim, like the former, is in *forma pauperis,* and that the parties are all insolvent, and that the land is constantly deteriorating in value so as now not to be worth the remainder of the purchase money with interest, and that the husband and wife and brother have colluded to delay the complainant and keep the land in litigation interminably, with a view to enjoying the rents and profits thereof until the same is worn out, and that the defendant in *fi. fa.* has openly boasted that he would do so without paying another dollar, and where all the circumstances of the case, and accompanying papers and depositions, show the truth of the case made by the bill and the frivolity of the pretended claim, and the prayer is for an injunction to restrain the defendant in execution and his wife from procuring any other persons to put in such claims, and further delaying the complainant, and for the appoint-- ment of a receiver to take possession of the land and hold the same until the pending claim by the brother is tried:

*Held,* that there is equity in the bill, and that the injunction should be granted and the receiver appointed; but as the claim by the wife was not decided, and the application for a receiver was not made until the growing crop was planted, that the receiver be instructed to allow defendants a reasonable time to gather the present crop, and the use of the tenements and premises for that purpose until that is done.

Notary public. Seal. Attestation. Process. Judgments. Vendor and purchaser. Injunction. Receiver. Before Judge CLARK. Webster County. At Chambers. June 17th, 1876.

Reported in the opinion.

GUERRY & SON, for plaintiff in error.

JOHN R. WORRILL, for defendants.

JACKSON, Judge.

Chappell sold Boyd a tract of land in 1872 for $1,200 00, and gave Boyd bond for titles to be made when the purchase money was paid. Boyd gave two notes for the land, each for $600 00—one payable in November, 1872, and the other in November, 1873. The first was paid; the second is not yet paid. Chappell sued on the second, got judgment, made deed to the land, under the statute, and levied upon it. Mrs. Boyd claimed the land on the ground that Boyd used her money, with the knowledge of Chappell, to make the first payment.

The jury found it subject; she moved for a new trial and brought the case here because the court overruled the motion. This court affirmed the judgment at the last term. Mrs. Boyd then surrendered her right and title to her brother, Sims, and Boyd made Sims a title, and Sims has put in his claim to the land. Mrs. Boyd claimed *in forma pauperis*, and so did Sims. The last note has been due three years; a claim involving, necessarily, the same title now set up by Sims, has been decided by the jury and the superior court, and this court, against that title, and this claim is put in by the brother on deeds made by the defendant in *fi. fa.* and wife, since the final trial of the case by this court. The land has deteriorated in value, and is becoming less valuable year by year, until it will not bring the balance of the purchase money and the interest. The deed to Sims was made on the day he claimed the land and was in the shape of a receipt of a note due in 1878, for $500, with right of possession reserved to Boyd, without rent, and on the same day Mrs. Boyd surrendered her title to Sims; her title being a deed made to her by her husband in 1873, in consideration that her money had paid the first $600 00. Boyd has been in possession four years, and the rental is worth from $100 00 to $150 00 per annum, and has boasted that he would keep the land until worn out without paying another dollar. Mrs. Boyd has sued Chappell for the $600 00 which Boyd first paid him; so that Chappell's land is gone at half the price agreed upon, and he is sued for the half he has received. A bill alleging these facts, and charging collusion between wife, husband, and wife's brother, to protract litigation, by claims purely frivolous, with no security for damages for delay, and praying injunction against threatened waste of crops, and against further frivolous claims, and the appointment of a receiver to take charge of the land and crops, rents, etc., until the claim case is tried, was brought by Chappell against Boyd and wife, and Sims. The answer denied the insolvency of Sims, and the demurrer to the bill is that there is no equity in it, and it is not sworn to, because the notary does not affix his seal to the affidavit, and that the process to

Chappell *vs.* Boyd *et al.*

the suit on which Chappell's judgment is founded leaves out the word "judge," bearing test in the name of the Honorable James M. Clark of said court. The chancellor refused the injunction, sustaining the demurrer and dismissing the bill; the complainant excepted, and the case is before us.

1. The first question is, was the bill sworn to? Is it necessary that a notary should annex his notarial seal to his attestation of an affidavit? We do not think that the act of administering an oath is such a notarial act as in the sense of the statute, Code, section 1503, requires a seal. The statute means acts connected with his commercial duties, such as noting and protesting bankable paper, etc. Besides, the court ought not to dismiss a bill or refuse an injunction on such a ground. Time should be given to perfect the affidavit or attestation, or to swear again to the bill.

2. Nor do we think that there is anything in the second point that the process does not bear test in the name of the *judge* of the superior court. It is true the word "*judge*" is omitted by mistake or carelessness, but the Honorable James M. Clark, of said court, is the judge thereof. Certainly it is too late after judgment to take such an exception to the process.

3. But the main question is, ought a court of equity to stop this litigation, threatened to be continued until the land is worn out without paying another cent for it, and to appoint a receiver to hold the estate for the party in interest? The claim is evidently frivolous. The merits of the case were passed upon on the claim case of Mrs. Boyd, and this claim of her brother is a mere renewal of her claim. The manner in which it has been fixed up has not even the merit of ingenuity. It is so thin anybody can see through the veil that would hide it. The cat is not even under meal enough to hide her. The whole body of the ostrich is visible, though his head be in the sand; if he does not see his exposure, everybody else who looks can. The present claimant, the brother of the former one, and brother-in-law of defendant, takes title, agreeing to give $500 00 for the land in 1878, the de-

fendant and former claimant, husband and wife, to remain in possession without rent until that time. This deed is made to him after the claim is decided against his sister, of which he has full knowledge, being a witness in the case. He buys a title knowing it to be worthless, gives nothing for it, but a promise to pay $500 00 in the distant future, and leaves possession in the defendant. He is evidently acting for the former claimant and the defendant in *fi. fa.* It is a plain case of collusion between the three. Inasmuch, therefore, as the complainant holds the title to this land, or has parted with it by making it to the defendant in *fi. fa.*, for the sole purpose of selling it by the sheriff to make his money, we think that equity should intervene by injunction to restrain these defendants from putting in any additional claim to this land, or procuring others to claim it for them, or either of them, and that a receiver should be appointed to take charge of it until the present claim case be tried. But inasmuch as the defendant in *fi. fa.* and wife had planted their crops and fixed for the year before the final decision of her claim and the application for a receiver, and the interference by a receiver would work hardship upon the agricultural interest of the state if allowed absolute dominion pending the making of the crop, and upon the principle that he that sows in peace shall reap in peace, that tenant for life is always entitled to emblements, because it was not known when he sowed that the life would end before he reaped, and that tenant for years, if the end of his estate was uncertain, was also entitled to reap what he had sown : 2 Blackstone, 95, 116 ; and that even a tenant at will cannot be dispossessed after planting his crop until he has gathered his emblements : Code, section 2292, we think, that the receiver should allow the defendants, Boyd and wife, a reasonable time to collect their crop of the present year, but take full possession in time for preparation for another year, and hold the place and work the same, holding the proceeds until this claim is tried. This case, we think, turns a good deal upon facts similar to those in the case of *Tufts vs. Little,* 56 *Georgia*

*Reports,* 139.   At all events, it is a clear case of gross fraud and collusion, and an effort to defeat justice by keeping up litigation after the merits of the controversy have been passed upon by the courts, and where the party complainant is kept out of *his land, the title to which he retained as his security,* the second payment for it refused and resisted, and suit brought against him and now pending for the first payment. He is kept out of his land and its price, too; he ought to have one or the other.

Let the judgment be reversed, and the chancellor proceed as indicated in this opinion.